DICKERSON, J., concurred in the result.

————◆————

SO. BOSTON IRON CO. *versus* BOSTON LOCOMOTIVE WORKS, & BANGOR, OLDTOWN & MILFORD R. R. CO., *Trustees.*
FRANCIS ALGER *versus* SAME & SAME, *Trustees.*
(*Bean versus Same & Same, Trustees.*)

Where a party residing in this State has been summoned as trustee of a party residing in the State of Massachusetts, in a suit brought by a corporation established in that State, the attachment of the funds is not dissolved, if the principal defendant shall, after the attachment, assign his estate under the insolvent laws of that State.

So, too, if the *plaintiff* is a citizen of this State.

EXCEPTIONS from the ruling of APPLETON, J.

The principal defendant corporation was defaulted in both actions, and the only question is whether the trustees are chargeable. The plaintiffs and principal defendants in the first action are corporations, incorporated by the Legislature of Massachusetts, having their place of business in Boston in that State. The trustees are a corporation under the laws of Maine, doing business in said county of Penobscot.

The trustees disclose an indebtedness due from them to the principal defendants, on account, which accrued on and before August 11, 1859. They also disclosed notice of the assignment, hereafter mentioned, to Gardner P. Drury and William Page.

Said assignees thereupon, by leave of Court, appear to defend their right to the funds disclosed, and offer, in proof of their claim, certified copies of proceedings under the insolvent laws of Massachusetts, upon petition of said principal defendants, dated October 14, 1859. The appointment of said Drury and Page, as assignees, October 27, 1859, proof of claim against said corporation previously contracted to the extent of $22552,50, and assignment to said Drury and Page, October 27, 1859, of all the estate, real and personal, including all deeds, books and papers, &c., which the corporation had or was interested in, on October 15, 1859.

Time of service of writs on trustee, October 1, 1859, in first of above actions; and August 31, 1859, in second.

The cases are alike in all the facts, except date of service of writ, and the fact that one of the plaintiffs is a corporation, while the other is an individual, resident of Boston aforesaid.

*Blake & Garnsey* and *C. P. Stetson,* for the several plaintiffs.

*A. W. Paine,* for the assignees.

The opinion of the Court was drawn up by

TENNEY, C. J.—By the statute of the Commonwealth of

Massachusetts, of 1851, c. 327, entitled an "Act to secure the equal distribution of the property of insolvent corporations amongst their creditors," it is provided that assignments may be made to persons, chosen or appointed as assignees, as therein set forth, of all the estate real and personal, of the corporation, excepting such as may be by law exempt from attachment, with all its deeds, books and papers, relating thereto, which assignment shall vest in the assignees all the property of the corporation, both real and personal, which it could, by any way or means, have lawfully sold, assigned or conveyed, or which might have been taken on execution, on any judgment against the corporation, although the same may be attached on mesne process, as the property of the said corporation ; and such assignment shall be effectual to pass the said estate, and dissolve any such attachment, made after this Act shall take effect, and the said assignment shall also vest in the said assignees all debts due to the corporation, and to any person for its use, &c. And the corporation is required to draw all such checks and orders for moneys deposited in banks, &c., as the assignees shall reasonably require, to enable them to demand, recover and receive all the estate and effects, assigned, "especially such part thereof, if any, as may be without the Commonwealth."

By the authority of this statute, the corporation, which is the principal defendant in the above named actions, created by the Legislature of Massachusetts, and having its place of business in the city of Boston, made the assignment, according to the provisions of the Act, to Gardiner P. Drury and William Page, who appear and claim the fund in question.

The South Boston Iron Company is an incorporated body, under the Act of the Legislature of Massachusetts, and its place of business is in the city of Boston. The plaintiff in the other suit named is a resident of the same city. The railroad company, summoned as trustee in these suits, was incorporated by the Legislature of the State of Maine, and

has its place of business in the county of Penobscot in this State.

The principal defendant has been defaulted in both actions.

The service of the writ in each of the actions was made upon the trustee corporation anterior to any proceedings under which the assignees appear to claim the fund, and to resist the judgment, to charge the trustee. The railroad company made disclosure, that it was indebted to the principal defendant in a specific sum stated, and that it was notified of the assignment to the persons who appear as the assignees. According to the exceptions, the only question, intended by the parties for adjudication in these cases, is whether the trustee corporation is chargeable, all the proceedings, necessary to present that question, being conformable to law.

The exceptions do not find at what place the respective claims of the plaintiffs in these actions originated, or at what place they were to be discharged, but, from the fact that the parties plaintiffs, and the party, which is principal defendant, had their places of business, or were resident in Massachusetts, it is inferrible that the contracts originated there, and were there to be performed. *Coolidge* v. *Poor & al.*, 15 Mass., 427 ; *Consequa* v. *Fanning*, 3 Johns. Ch., 610.

It is not contended by the assignees that the statute laws of one State can govern the Courts in another. But that the principle of indispensible comity may so far extend that the judgments, under certain statutory provisions of one State, may be treated in others, as having the like effect in relation to certain matters. Bankrupt laws and insolvent laws are examples. *Very* v. *McHenry*, 29 Maine, 206 ; *Long* v. *Hammond*, 40 Maine, 204 ; *Burlock* v. *Taylor*, 16 Pick., 335.

Discharges under insolvent laws of one of the United States have been treated as good in another, with certain limitations, against those who are citizens of the State

where the discharge was given, and not so against citizens of other States. *Ogden* v. *Saunders*, 12 Wheaton, 213; *Blanchard* v. *Russell*, 13 Mass., 1; *Betts* v. *Bayley*, 12 Pick., 572.

It is proper to remark, that discharges under insolvent laws of other States, are pertinent to the question, now before us, only so far as they show the rules by which this comity is extended by the Courts of one State to those discharged under insolvent laws of another. No question of discharge is now presented, as no judgment of any kind appears to have been finally rendered, and the statute invoked by the assignees does not provide for a discharge of insolvent corporations. The inquiry here is, whether the assignment, under the statute of Massachusetts, can vacate an attachment, made in this State under its laws, of the funds, which belong to the corporation, which seeks the aid of the statute referred to, the attachment having been made before any of the proceedings were instituted by the corporation, which resulted in the assignment.

By the authority of the cases cited by the assignees, the assignment resting alone upon the statute of Massachusetts would be effectual, to invest the entire right to the debt, due from the trustee to the principal defendant, in the assignees, so that it could not be defeated, or qualified by the service of the trustee process, *subsequently made*. The laws of this State, if unaffected by the statute of Massachusetts, would have authorized such attachment, and it would be valid. But by the rule of comity, referred to, the assignment would be upheld here, and an attachment made after the assignment, and notice thereof to the creditor would be invalid.

When a contract is made in a certain country or State, the party contracting is presumed to be conusant of the laws of the place where he is, and he must know that his contract is to be judged of, and carried into effect, according to those laws which are supposed to be an element in the contract itself; and hence the discharge of a debtor un-

der the bankrupt law of the country where the contract was made, is good every where. *Very* v. *McHenry* and *Blanchard* v. *Russell*, before cited.

But remedies are regulated and governed by the laws of the place where the remedy is sought. The process which the creditor may have to obtain satisfaction of his claim against his debtor, either by the attachment of property, the arrest of the party indebted, or a simple summons to appear before a tribunal, that a valid judgment may be obtained, are all determined by the *lex fori*. By what rule of law, then, can the assignees, appointed under an insolvent law of another State, after an attachment of property, come in here and defeat that attachment, by a claim thereof, by virtue of that insolvent law? If the creditor, who caused the attachment to be made, is a citizen of this State, he is excepted from the rule of comity, because the extension of this rule to this State would be injurious to a citizen thereof. *Very* v. *McHenry*, before cited.

In *May* v. *Breed*, 7 Cushing, 15, SHAW, C. J., in giving the opinion of the Court, on page 41, says, — "though the point has been long doubted, we consider it as now settled, by a preponderance of authority,-that when a debt, due by an American merchant to an English bankrupt, is attached by an American creditor of the English bankrupt, by a trustee process, or process of foreign attachment, the assignees of the English bankrupt cannot come in and interpose such assignment, to defeat such attachment, and claim the assets as by a prior title."—"Considering, therefore, what the weight of authority now is," to which Chancellor KENT, contrary to his opinion in *Holmes* v. *Rensen*, now assents, (2 Kent's Com., 405,) "that the assignee of a foreign bankrupt will not have a right to defeat the attachment of a domestic creditor, made in conformity with the laws of his own State, it is founded on the principle that the foreign assignee can claim to sue here, not by positive law, but by comity only, and that this comity will not be yielded, when it would tend to injure the citizens of the State where the

remedy is sought, and that every State has both the right and the power to control and regulate personal property found within its limits, and having given such right to its own citizens, they shall not be taken away by the application of the principle of comity. This principle is entirely distinct from that which gives effect to the certificate of discharge of a bankrupt against a debt contracted in the country of the bankrupt, and to be executed there."

In the foregoing quotation, the attachment of the creditor is held valid against the claim of the assignee in bankruptcy, because made in conformity to the law of the country where the creditor is a citizen. Will this principle apply to the case, where the creditor is a citizen of the State, where the insolvent law is in force, and he seeks his remedy by the ordinary process of attachment, &c., in another? We think it must apply to those who are entitled to the process of the State, by authority of which process he can make a direct attachment of the property of his debtor, or by virtue of which he can indirectly secure a fund by foreign attachment; and can obtain his judgment. Citizens of other States are entitled to bring suits in our Courts. Const. U. S., art. 4, sec. 2. Being so entitled, they have all the rights of our own citizens in securing their claims by attachment or by arrest of the party indebted; and the estate of the debtor party, living out of the State, may be secured by the process of foreign attachment or that which is direct. R. S., c. 86, § 7; Ibid, c. 81, § 18. These provisions are the positive law of this State, and Courts have no power to dispense with them, by the rules of comity.

Previous to the commencement of any proceedings, which resulted in the assignment of the property of the principal defendant, the plaintiffs severally, in their actions, obtained the processes, by which an attachment was made of a debt due from the trustee to the principal defendant. No one can doubt that the attachment, at the time it was made, was perfectly valid. The action was entered in Court. The default of the principal defendant gave jurisdiction over the

fund secured. The trustee submitted to the jurisdiction and was bound. The assignees come in, claiming the fund, but, so far as appears, do not deny the right of the plaintiffs to the judgments, to which they would have been entitled, if they had been citizens of this State.

*Exceptions sustained. — Trustee charged.*

In the case of *Rufus D. Bean* v. *the same defendants,* (*principal and trustee,*) the Court, at *Nisi Prius*, adjudged that the trustee be charged, to which exceptions were filed.

TENNEY, C. J. — This case differs in no essential particular from the preceding, excepting that the plaintiff is a citizen of this State.          *Exceptions overruled.*

*Trustee charged.*

APPLETON, CUTTING, MAY and DAVIS, JJ., concurred.

APPLETON, J. — The plaintiffs and defendants are corporations, existing by force of the statutes of Massachusetts, and having their place of business there.

The defendants went into insolvency, under the laws of Massachusetts, on 14th Oct., 1859. The trustee process was served 1st Oct., 1859.

The plaintiffs are entitled to judgment. The proceedings in insolvency constitute no bar to the suit.

By the statute of Massachusetts, an assignment under their insolvent laws dissolves all preceding and existing attachments in that Commonwealth. It is insisted, *therefore,* that the trustee in this case should be discharged.

The principle of comity has no application to the remedial process of a country. Suppose the attachment had been of a cargo of iron, before the assignment. The attachment, when made, was valid. So was the trustee process. It sequestrated, for the time being, the funds of the defendants in the hands of the trustee. Now, there is no mode recognized by our law by which this Court can act in the premises, except by charging or discharging a trustee. But the trustee, having funds, cannot be discharged. There is no

statute here, by its own force, dissolving an existing attachment or providing for its dissolution by an order of the Court. The arrest of an individual or the attachment of property is a part of the remedial process belonging to the *forum* in which the cause is tried. It has nothing to do with the con-. tract, and is in no way to be governed or controlled by the law of the place, where the contract was made No principle of comity requires us to dissolve an attachment, any more than to release a debtor from arrest, because the parties to the suit *here* may be domiciled in a country where arrest and attachment are unknown.

The contract between these parties may be enforced here, and, such being the case, the plaintiffs are entitled to all the remedies which the law gives other creditors. There is but *one* process, and that applies to all who are amenable thereto. No provision exists for its alteration.

One ground upon which a foreign assignment is upheld so as to defeat a trustee process is, that the assignment is effectual to pass property wherever situated, and consequently the supposed trustee has ceased to owe the debtor and owes his assignee. *Burlock* v. *Taylor*, 16 Pick., 335. But this principle cannot apply, for the trustee was summoned *before* the assignment, and, consequently, there was a debt to seize.

The question, therefore, is whether we shall vary our processes, or release attachments, or order them to be released, because, by the laws of another State, the attachment, if made there, would have been dissolved by virtue of its statutes. There cannot be two modes of procedure — one for the citizen and a different one for the " stranger within our gates." " A person suing in this country," remarks Lord TENTERDEN, in *De la Vega* v. *Vianna*, 1 B. & Adol., 284, " must take the law as he finds it. He cannot, by virtue of any regulations in his own country, enjoy greater advantages than other suitors here. And he ought not, therefore, to be deprived of any superior advantage, which the law of this country may confer. He is to have the same rights,

which all the subjects of this kingdom are entitled to." Story's Conflict of Laws, § 571.

The plaintiffs, being prior in time to the assignees, their claim has precedence by the law of this State, which alone we are called on to administer. The attachment, whether by trustee process or otherwise, is part of the remedial process of this, and cannot be affected by the statutes of any other State. *Upton* v. *Hubbard*, 28 Conn., 274.

*Exceptions sustained. — Trustee charged.*

Davis, J. — I concur in this. The trustee is to disclose whether he had goods, or was indebted, *at the time of the service.* If he had, the right of the plaintiff thereto was *perfected* by the *service.* All subsequent proceedings are simply to determine the condition of the parties *then.* The Court is to adjudicate as to how the parties stood *then.* A *subsequent* assignment is like inadmissible evidence. It passes nothing, because, *after the service*, the creditor has nothing to assign. He is divested of the debt by the *service.* The order *charging the trustee* merely gives effect to the right before secured.